ETIENNE TOTTI, Plaintiff and Appellee, *v.* AGUSTÍN FERNÁN-DEZ ET AL., Defendants and Appellants.

No. 4827. Argued December 18, 1929.—Decided February 28, 1930.

*G. Benítez Gautier,* for appellants.   *M. Acosta Velarde,* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

The following paragraphs are quoted from the statement of the case and opinion filed with the judgment, from which the present appeal has been taken:

"In this case the plaintiff has alleged and the defendants admitted that on April 18, 1927, the defendants subscribed and delivered to him a promissory note, which literally copied reads as follows:

" 'For $825—Due on October 30, 1927. We promise to pay jointly and severally, in the city of San Juan, P. R., to Mr. Etienne Totti or to his order, on the 30th of October, 1927, the sum of eight hundred and twenty-five dollars in United States currency, value received. We bind ourselves to pay the costs, expenses and fees of the attorney who may be engaged by the holder of the present instrument in the event of a suit; to pay interest at the rate of twelve per cent annually after maturity, and we expressly submit to the jurisdiction of the courts sitting in this city in any action or proceeding arising upon the within instrument.—San Juan, P. R., April 18, 1927. (Signed) Agustín Fernández. (Signed) Jesús Benítez. (Signed) A. H. Géigel.'

"That payment has been demanded of the defendants, who have failed to pay the amount of the note, either in whole or in part, to the plaintiff or to any other person.

"The plaintiff has further alleged and shown that he endorsed the aforesaid note to the Banco Popular, which paid him the amount thereof, and that as the defendants failed to pay the note when it became due, he took it up and now holds the same.

"In their answer the defendants admitted the execution and delivery to the plaintiff, on April 18, 1927, of the note transcribed in the second paragraph of the complaint, but denied that the making and delivery of the said note was for value received, or for any other value, and they averred instead that they subscribed and delivered the said note in order to accommodate the plaintiff and to be used by the latter as collateral security for a loan which he desired to obtain from the 'Banco Popular de Puerto Rico'.

"The defendants further alleged that when they subscribed and delivered the note, they did not receive any value from the plaintiff; and that they did so only in order 'to accommodate him, so that he might use the note as collateral for a loan which he wished to secure from the Banco Popular, and at the proposal of the plaintiff and pursuant to an agreement between him and the defendants'."

The court found for the plaintiff and adjudged the defendants to pay the sum of $825, together with interest and the costs of the action. The present appeal has been taken from that judgment and is based on fourteen assignments of error. The first and second assignments are argued jointly. They are as follows:

"I.—The court erred in holding that the note sued on is presumed to be mercantile paper.

"II.—The court erred in finding that obligations of this kind are regulated by the provisions of the Code of Commerce."

Although these two points (in reality only one) are quite ably argued by counsel for the appellants, we are not convinced of the existence or importance of the errors thus assigned.

It is well settled in this jurisdiction that promissory notes and documents payable "to order" are presumed to be commercial instruments. Probably the decision which has had the greatest influence in establishing this doctrine in Porto Rico is the judgment rendered on January 25, 1898, by the Supreme Court of Spain, in an appeal taken in a suit brought by Antonio Silvestre Ayolli against the Banco de España in Valencia. One of the holdings of the said decision is as follows:

"Whereas promissory notes payable to order and endorsements made thereon should be considered as commercial instruments in accordance with section 2 of the Code of Commerce, as they are expressly defined in the said law, the presumption being therefore that they proceed from commercial transactions, where there is no evidence to the contrary."

In *Moreno* v. *Heirs of Bahr,* 3 P.R.R. 148, a promissory note made payable "to order" and proceeding from a commercial transaction was involved. In *Hernández* v. *Muñoz,* 10 P.R.R. 16, the doctrine laid down by the Supreme Court of Spain in its judgment of January 25, 1898, *supra,* was cited with approval; and in *Rosaly* v. *Alvarado,* 17 P.R.R. 100, that doctrine was again followed:

In *Vázquez* v. *Laíno*, 23 P.R.R. 218, the case of *Ochoa Bros.* v. *Lanza*, 17 P.R.R. 398, holding that promissory notes payable to order are commercial instruments, was distinguished and the rebuttable nature of the presumption involved pointed out. In *Román* v. *Martínez*, 25 P.R.R. 610, the doctrine was reaffirmed and, in the opinion, one of the fundamental reasons therefor was stated, namely, that by making a promissory note payable to order the instrument becomes negotiable by endorsement without any requirement of notice to the debtor of the transfer.

The opinion in *Barros* v. *Padial*, 35 P.R.R. 237, must be read in connection with the cases above cited. Something was said in that opinion to the effect that a promissory note payable to order is a commercial instrument, but this must be understood in the sense that the instrument is reputed to be commercial. There can be no doubt that such is the real meaning of the decision, in which the following was said:

"The commercial character of a note drawn to order is a universal one, applicable to all promissory notes."

The method of Euler was then effectively applied to render the principle graphically and easily understood. And it was further said in the opinion:

"If a note to order is given, the party drawing it may be said to have converted a simple loan into a commercial transaction."

This is the presumption which is subject to be controverted.

It is true that the district court has stated in its opinion that the note in question must be presumed to be commercial, since it was made payable to order, and; starting from this assertion, the court reached the conclusion that the defense of *non numerata pecunia* is not available in cases of promissory notes which contain the words "value received", citing the case of *Crédito y Ahorro Ponceño* v. *Beiró*, 32 P.R.R. 752, in which it was held that a person who subscribes

an obligation as a solidary obligor can not set up as a defense the fact that he did not profit by the loan involved.

But, aside from the fact that objections to the reasoning of the trial judge should not be considered on appeal if the judgment rendered by him is correct, it seems to us that in the present case the lower court did not base its decision upon the presumptive character of the instrument, but upon the evidence as a whole.

We find the following paragraph in the opinion filed by the district judge.

"Regardless of what the previous transactions between the parties may have been, what we really have before us is the enforcement of an obligation lawfully contracted. If this obligation was undertaken in order to release a third person from a certain liability contracted by such person in favor of the plaintiff, the defendants, by their own acts, became themselves bound to the plaintiff and relieved the said person of that liability. Doubtless, they have an action against the person profiting by the transaction, but this right of indemnity does not diminish in any way their own liability. Pérez v. Santiago Bros., 37 P. R. R. 15; Crédito v. Beiró, supra."

It will thus be seen that the question as to whether or not the instrument herein is presumptively commercial was not made the basis of the judgment appealed from, and, this being so, assignments I and II must be disregarded.

The third assignment of error is formulated as follows:

"The court erred in holding that the defense of want of consideration is not inapplicable to promissory notes containing the stipulation *value received.*"

In their argument on this assignment the appellants go into a discussion of the element of consideration in contracts and connect it with their contention that the promissory note was signed by Fernández and Benítez Castaño in order to accommodate Totti. On this point they cite some jurisprudence from various States, regarding accommodation bills and notes, and the work of Joyce, as to defenses in cases involving commercial instruments. But, even assuming the cor-

rectness of the decisions cited on the subject of accommoda̱
tion, we fail to perceive any reason for disregarding the pro̱
visions of our Code of Commerce. If our statutory law did
not cover the case, we would be bound, in accordance with
section 7 of the Civil Code, to seek for a solution in the prin-
ciples of equity—in the sense that these principles are de-
fined by the cited section, that is, taking into consideration
"natural justice, as embodied in the general principles of
jurisprudence and in accepted and established usages and
customs." We could not, however, since we have no authoṟ
ity therefor, adopt the jurisprudence of other jurisdictions
on a parity with our own statutory law. Statutes are the
product of legislatures, not of judicial tribunals, which have
no power to enact them either directly or indirectly.

As to the consideration (*causa*) in contracts, our Civil
Code contains all the necessary provisions for classifying and
including every form of *consideration* within sections 1241,
1242, 1243, and 1244 thereof. It is the province of the courts
to consider, examine and determine the cases pending before
them in the light of the principles and the rules enacted into
the code.

By said section 1241 the various kinds of consideration
are identified according to the nature of the contract in each
case. In onerous contracts the consideration is the under-
taking (*prestación*) or service, or the promise thereof; in
remuneratory contracts, the service or benefits remunerated;
and in those of pure beneficence, the liberality of the bene̱
factor. And we hold that there is not a single contract which
can not be included, as regards the consideration, in some
one of the above three groups.

Only one case of absolute nullity (*ineficacia*) is provided;
that contemplated by section 1242, which prescribes that con-
tracts with an illicit consideration produce no *effect whatso-
ever*. (Italics ours.) Section 1243 establishes the voidable
character of contracts wherein a false consideration is stated,
unless it be proven that they are supported by another real

and licit one, thus making the substance or reality of the consideration to prevail over the form or expression thereof; and section 1244 establishes the controvertible presumptions as to the existence and licitness of the consideration.

Let us assume that in the present case the consideration for the note had been incorrectly stated when mention was made of a value received; that the debtor attacks the consideration and denies the value received invoking the provisions of section 1243 of the Civil Code, or even the exception contained in subdivision 2 of section 101 of the Law of Evidence where, in deeming conclusive the truth of the facts recited in a written instrument as between the parties or their successors in interest, exception is made of "the recital of a consideration"; and that, in spite of all this, the creditor shows that a real and licit consideration exists, such as the payment to be made to Totti by Arturo H. Géigel, then the contract subsists and the obligations of Benítez and Fernández are enforceable. The trial court wisely and properly considered the case without separating the facts from the law; and in regard to the facts it found as follows:

"It may be that the defendants were deceived into subscribing the obligation sued on herein; but this can not prejudice in any way the rights of the plaintiff, which derive from the acts and the conduct of the defendants themselves. There is no showing that Totti induced the defendants or either of them to subscribe and deliver the said note. The execution and delivery of the note was procured without the intervention of Totti. Can it be set up as a defense that the instrument was subscribed and delivered to accommodate Totti, that is, to enable him to get a loan? In our opinion this question must be answered in the negative. As stated by a text-writer, 'man, who is the master of his own actions, must be responsible for the consequences thereof'."

And again referring to the facts, the trial court further said:

"If the theory of the defendants were to prevail, the plaintiff would then suffer great prejudice, since in the event that the obligation contracted in his favor by a third person were canceled, no one

would be left from whom he could demand indemnity and he would be thus defrauded in his rights and unjustly deprived of his property."

Indeed, the ground of the decision of the district court is to be found in the weighing of the evidence rather than in any other aspect of the case.

If the testimony given at the trial is closely examined, it will be found that the inference which impressed itself upon the mind of the trial judge was that the promissory note subscribed by Benítez, Fernández, and Géigel in favor of Totti was delivered to the latter in payment of money which Géigel owed him. Agustín Fernández is a friend of Géigel, with whom he has had business dealings; but he is only an acquaintance of Totti. Géigel asked Fernández to subscribe and deliver the note, without any request from Totti, to whom Fernández had not even spoken about the matter. It is not logical to believe that Fernández would bind his credit to benefit a person, whom he scarcely knew and who asked nothing of him. Besides, from the rest of the testimony in the case it appears that witness Campos was present at the time Fernández signed the note and that he heard Géigel state to Fernández that he needed the signature in order to secure his indebtedness to Totti. Witness Juan Rodríguez, a brother-in-law of Géigel, mentioned the latter's indebtedness to Totti arising from the construction of a house and stated that Géigel made payment to Totti, partly in cash and partly in promissory notes, one of which was subscribed by Fernández. According to the testimony of the defendant, Benítez, the latter did not talk with Totti before signing the first note; and the witness asserted that he only signed for the benefit of Totti and not of Géigel, and that he said so to the latter. We attach the greatest importance to the testimony of William Biscombe, who was the manager of the Banco Popular at the time he testified, and who stated that he knew Totti, that the latter's credit was good at the Banco Popular and that he did not need an accommodation signature to secure

a loan of $2,000, because his own signature and that of his wife would be sufficient to obtain a loan for that amount.

Without any doubt, the trial judge fully believed the evidence introduced by the plaintiff.

The following doctrine, laid down by this court in *Cintrón & Aboy* v. *Solá*, 22 P.R.R. 245, 250, should be cited in this connection:

". . . That Celestino Solá did not profit by the loan is immaterial; he agreed to be a solidary debtor in order to accommodate Solá & Son, and that agreement was expressed in the promissory note when the defendant signed it as a solidary debtor. The law of the contract was established in the note as the last expression of the intention of the parties and Celestino Solá must submit to it."

That doctrine is fully applicable to the fourth assignment of error, which we will not extensively consider, as it is defective in that it refers, not to the judgment, but to some of the expressions used in the opinion filed by the trial judge. We have heretofore repeatedly and uniformly held that the reasoning of the trial judge can not serve as the basis of an assignment of error or of an appeal.

A fifth error is assigned as follows:

"The court erred in holding that, regardless of what the previous transactions between the parties may have been, what we really have before us is the enforcement of an obligation lawfully contracted."

The appellants argue on this point that no consent was given by the defendants to the contract when subscribing the note.

There is no merit in the assignment. In the case of an instrument like the one now before us it would be very difficult to establish a mistake invalidating the consent. In order for error to invalidate consent and therefore the contract, it must have existed with respect to the substance of the agreement, and, in the cases expressly provided by the Civil Code, with respect to the person, when the consideration of the person was the principal cause of the contract.

In a case such as the one at bar and in view of the state of the evidence herein, it can not be validly contended that there was mistake affecting the consent.

The sixth assignment of error is predicated upon the assumption that the court accepted in a hypothetical way that the note was subscribed in order to relieve a third person of a certain liability. We do not think that this interpretation advanced by the appellants is correct. It is true that the court said, referring to the obligation:

"If the latter was undertaken in order to release a third person from a certain liability contracted by such person in favor of the plaintiff . . ."

But this sentence ought to be considered in its entirety, and it concludes thus:

". . . the defendants, by their own acts, became themselves bound to the plaintiff and relieved the said person of that liability."

Besides, it should be borne in mind that the court, in the paragraph next preceding the one above quoted, had already unequivocally declared that the question before it for determination was "the enforcement of an obligation lawfully contracted."

A litigant can not rest his appeal upon isolated phrases, nor even upon whole paragraphs, used in the opinion of the lower court, if the judgment, whether with or without such phrases or paragraphs, is just and in accordance with the law.

The sixth, seventh, eighth, ninth, tenth, eleventh and twelfth assignments of error are argued together. They are as follows:

"VI.—The court erred in accepting the hypothesis that the instrument was executed in order to release a third person from a certain liability.

"VII.—The court erred in holding that the defendants and appellants by their own acts bound themselves to the plaintiff.

"VIII.—The court erred in holding that the rights of the plaintiff arose from the acts and conduct of the defendants and appellants.

"IX.—The court erred in holding that there is no showing from the evidence that Totti had induced both of the defendants and appellants, or either of them, to subscribe and deliver the said promissory note.

"X.—The court erred in holding that it can not be set up as a defense that the instrument was subscribed and delivered in order to accommodate the plaintiff, that is, to enable him to obtain a loan.

"XI.—The court erred in holding that the acts of the defendants and appellants render them liable to the plaintiff for the obligation contracted and that they can not successfully invoke the defenses pleaded by them.

"XII.—The court erred in holding that, from the execution of the note, the presumption arose that the defendants subscribed it with the intention of abiding by the full legal effect of the instrument, and that the plaintiff was entitled to rely on such presumption."

The appellants scan the opinion of the lower court, select from it such phrases and reasoning as they thick best adapted to their contentions, and then state their argument, in which they put forward once more the theory of the consent and other points already discussed. Essentially, their attack is directed to the weighing of the evidence rather than to any other conclusion, but without charging manifest error, passion, prejudice or bias on the part of the trial judge.

To recount here the well known pronouncements of this court defining its attitude, to the effect that the object of an appeal must be the judgment and not the reasoning of the lower court, and that the weighing of the evidence will not be disturbed on appeal unless it be claimed and proved that manifest error has been committed or that passion, prejudice or bias influenced such weighing, would be a bothersome—though by no means a difficult—task since the decisions on this matter, all uniform and constant, are numerous and require no restatement at this time.

The foregoing considerations suffice to overrule the assignments of error last above quoted. And, as the district court had before it an obligation lawfully contracted, its decision

adjudging that the defendants make payment was a just one. This disposes of the thirteenth assignment of error.

As regards the error relating to the costs (fourteenth assignment), we think that the trial court properly exercised its discretion in imposing them on the defendants, who resisted payment of the note.

For the foregoing reasons the judgment appealed from must be affirmed.